EMMETT MCFARLAND v. THE STATE.

No. 21179. Delivered November 27, 1940.
Rehearing Denied January 8, 1941.

534

The opinion states the case.

*Shead & Smith,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of establishing a lottery, and disposing of certain personal property by lottery, and by the jury fined $250.00, hence this appeal.

Appellant's bill of exceptions No. 1 complains because of the fact that the jury for the week having been reduced by excuses and the utilization of twelve members thereof in the trial of another case in the district court of Gregg County, there remained but eight members of the regularly drawn general panel for the week, and therefore the trial court ordered the sheriff of that county to summon additional jurors to fill out the necessary members from which this jury was selected. We think such an action was in accordance with the statute, Art. 2116c, Sections 3, 4, and 5, Vernon's Texas Statutes.

536

Bill of exceptions No. 2 complains because of the failure of the trial court to charge the jury peremptorily to acquit appellant because of the fact that the "witnesses Willie Gray and Pearl Gray are accomplices or participants, the evidence showing that whatever game was indulged in or drawing had was participated in by the said Willie and Pearl Gray, and there is no sufficient corroboration of their testimony * * *."

We find in the record a requested charge that instructs the jury that such witnesses were accomplices, and that no conviction can be had "unless you find other evidence in the case to corroborate the testimony of the said Willie Gray and Pearl Gray you will find the defendant not guilty." We also find under said special instruction, above the court's signature, the following: "Given _____ Refused _____." We are left in doubt as to whether this charge was given or refused. We can only conjecture that because of its incompleteness that same was not given by the trial court. In any event we do not find any merit in this bill requesting a peremptory instruction. We do not think that the mere purchase of a ticket to this lottery drawing would constitute the purchaser a participant in the establishing a lottery, and again we thing that the admitted evidence, outside these two witnesses' testimony, shows the establishment of a lottery by appellant.

Bill of exceptions No. 3 states a sound legal proposition to the effect that one accomplice can not furnish sufficient corroborative testimony to that of another accomplice in order to meet the demands of the law. The application of this doctrine in the instant case depends, however, on matters set forth in bill of exceptions No. 3, which is concerned with a statement made to officers Lee and Whatley as to what appellant told them at the time they raided this device which is claimed to have been a lottery. The testimony shows that these officers looked through the window and saw appellant, the only white man, in a room filled with negroes, appellant shaking a bag of some kind, and taking therefrom certain marbles, flat on one side with numbers thereon, and placing such numbered marbles on a table. When said marbles had been so placed, a ticket theretofore sold to some person bearing these numbers was the winning ticket, and its holder was rewarded with the payment of a certain sum of money.

A portion of this above set forth information was given through the testimony of the officers as seen by them while looking through the window of the house where this drawing

was being held by appellant, and the portion as to how the award of money was made came from a statement given to the officers by appellant after they had entered the room where the drawing was being held. It was the contention of appellant that appellant "was under arrest at the time," and that therefore the court should have instructed the jury to return a verdict of not guilty, the reason being that the witnesses, the Gray negroes, were accomplices, and there being no testimony other than that of these negroes and the two officers, the State had failed to make out a case.

The officers' testimony shows that they arrested everybody in the room when they first entered it; however, upon the suggestion of appellant and his promise to bring in the four negroes employed by him, as well as come himself to the officers on the next day, they released all parties, and when they left they took no one with them, leaving all parties at the house where the game was being played.

In the first place we do not think that Willie and Pearl Gray were accomplices. Willie Gray was not at the house at the time. He and Pearl Gray merely bought a ticket from a negro agent of appellant, and had nothing to do with the establishment of this lottery. They owned none of this paraphernalia and shared in none of the profits. True, such game was in their house, but they were not interested in same, nor did they understand its operation. They merely bought a ticket for ten cents in this drawing. As to the statement of appellant to the officers, it is not shown when same was made, nor at what time during the raid,—whether during or after the officers had come into the house. If made when they entered the house immediately, as may be inferred, then it seems to be res gestae of the transaction, as the actual drawing was at such time taking place and appellant explained same to them. If the statement was made after the raid had taken place, then it would seem to have been made after appellant as well as his helpers had been released by the officers. In either event we think the same was admissible. We also think the trial court was correct in overruling the motion for an instructed verdict.

Bill of exceptions No. 4 relates to the court's failure to give a peremptory instruction because there was no testimony going to show by what name the game thus established was called. We do not agree with this contention. A witness denominated the game as "Policy." We think that was correct. It was also sometime called the game of "Numbers." However it was not

material by what name the game was called; it was only material as to by what means it was played.

We also think that the indictment was sufficient when it alleged that the name of the game thus played was unknown to the grand jury, the name itself not being a material matter. We see no merit in bill No. 6 and same is overruled.

Bill No. 7 is multifarious and contains many different propositions and rulings thereon, and can not be considered by us.

We have carefully examined all other bills presented to us and find that they are but a reiteration of matters herein already passed upon, and same are deemed to be without merit and are overruled.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant was tried in the County Court upon an indictment returned into the District Court of Gregg County.

No question as to the jurisdiction of the County Court was raised prior to nor during the trial, nor mentioned in the motion for new trial nor suggested upon original submission in this Court. For the first time in his motion for rehearing here appellant seeks to raise the question of jurisdiction of the county court for lack, as he contends, of an order of transfer of his case from the District Court to the County Court as provided in Article 419 C. C. P.

It will be found that some of the very cases relied upon by appellant were expressly overruled in Lenzen v. State, 112 Texas Cr. R. 297, 16 S. W. (2d) 234, in which the question of jurisdiction of the county court was sought to be raised for the first time in this court. It was said in Lenzen's case: "We are not in agreement with appellant that he may raise this matter in this Court, and it appearing to have been here presented for the first time, we think it comes too late."

It is not necessary to determine whether the Lenzen case should be followed here because we think appellant's contention is based upon a misapprehension of the record.

The original transcript was filed in this court on May 11, 1940. It was discovered that in said transcript no order trans-

ferring the present indictment appeared. A supplemental transcript was obtained and filed in this Court on September 16, 1940, from which it appears that the indictment was returned into the District Court of Gregg County on November 23rd, 1939 and on December 4th, 1939 was ordered transferred to the County Court of said county. The county clerk of said county attaches to said supplemental transcript a certificate "that the above and foregoing pages contains a true and correct copy of the original order or transcript transferring the case of State of Texas v. Emmett McFarland from the district court to county court *as same appears filed in this office on December* 4, 1939." It is thus made to appear affirmatively that the county court had jurisdiction of appellant's case, but that the order of transfer was simply omitted from the original transcript.

Appellant renews his contention that the trial court should have instructed a verdict of not guilty, and that this court should not permit the conviction to stand, it being appellant's position that Willie Gray and Pearl Gray were accomplice witnesses and that their evidence was not sufficiently corroborated to meet the requirements of Art. 718 C. C. P. (1925). It appears that Art. 639 P. C., permitting conviction for certain gaming offenses on the unsupported testimony of an accomplice witness has no application where the prosecution,—as here—is for establishing a lottery. (Art. 654 P. C., 1925.) We remain of opinion as expressed originally that neither Willie Gray nor Pearl Gray became accomplice witnesses in appellant's offense of establishing a lottery from the mere fact that they purchased a ticket which permitted them to have a chance in the result of the lottery.

It is pointed out in appellant's motion that the lottery in question was established at Willie Gray's house and that he received compensation for permitting his house to be so used. Upon further consideration we think this fact admitted by said witness does characterize him as an accomplice witness. It does not follow, however, that a reversal should result. There is no evidence that Pearl Gray knew that her husband, Willie, was being paid for the use of his house, or that she had any connection with the lottery scheme further than purchasing a ticket, and it can not be said as a matter of law that she was an accomplice witness. Her evidence corroborates the testimony of her husband. It is further our opinion that even if both she and her husband were held to be accomplice witnesses, there is ample corroborating evidence in the record from appellant's own admissions to the officers and the latter's testimony as to

the things seen by them before their presence became known to satisfy the demand of the statute, Art. 718 C. C. P. (1925), that accomplice witnesses must be corroborated by other evidence tending to connect accused with the commission of the offense charged before a conviction can be had.

· The indictment alleged that the lottery established by appellant was "under a name and denomination to the grand jurors unknown." It is urged by appellant that under such averment it was incumbent on the State to show that the grand jury used ordinary diligence to ascertain the name of said lottery, and contends that the State failed to make such proof and that such failure is fatal to the State's case. The rule invoked will be found stated in Branch's Ann. Texas P. C., Sec. 2444, and many supporting authorities are listed. As we understand the record the State undertook to support the averment mentioned by the evidence of Mr. Anglin, the Assistant District Attorney of Gregg County, who was with the grand jury when it was investigating the charged offense. He testified as follows: "I was present at the time the negroes that were arrested at this particular residence were questioned. I was present when Willie Gray and Pearl Gray and *every witness in this case, when they testified before the grand jury what this game was called.* Some called it Polly, some called it Policy Game, some said numbers, other___ did not know what it was called."

It would appear from this testimony that the grand jury was trying to find out the name of the game, and when the witnesses did not agree on it, and some did not even pretend to know what it was, it occurs to us the grand jury was justified in saying that it did not know the name, and that there is no showing of lack of diligence to ascertain it.

The motion for rehearing is overruled.